**FILED**

No. 5:07-HC-2102-BO

AUG **0 5** 2008

DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

|                                  |   |              |
|----------------------------------|---|--------------|
| CHARLES MEWBORN,                 | ) |              |
|     Petitioner, | ) |              |
|                                  | ) |              |
| v.                               | ) | **ORDER**    |
|                                  | ) |              |
| LEWIS SMITH,                     | ) |              |
|     Respondent. | ) |              |

Charles Mewborn ("petitioner" or "Mewborn"), a state prisoner, petitioned this court for a writ of habeas pursuant to 28 U.S.C. § 2254. Presently before the court is respondent's Motion for Summary Judgment. Mewborn was served with the Roseboro notice, however, he made no response. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). The time for him to do so has long since expired, and the matter is ripe for determination.

## STATEMENT OF THE CASE

On August 16, 2004, Mewborn was convicted in the Superior Court of Pitt County after a jury trial of trafficking cocaine by possession, transportation, and sale. He was sentenced to three consecutive terms of 35-42 months imprisonment. On July 5, 2006, the North Carolina Court of Appeals issued a published opinion finding no prejudicial error. On October 5, 2006, the Supreme Court of North Carolina dismissed his appeal and denied discretionary review. State v. Mewborn, 178 N.C. App. 281, 631 S.E.2d 224, review denied, 360 N.C. 652, 637 S.E.2d 187 (2006). At trial, Roddey M. Brown, III represented Mewborn. On appeal, Kelly D. Miller and Daniel R. Pollitt appeared as his counsel.

On January 19, 2007, petitioner filed a pro se motion for appropriate relief (MAR) in the Superior Court of Pitt County. On March 29, 2007, Judge Duke summarily denied the MAR.

The state court record does not indicate any further review of his issues within the state courts of

North Carolina. This writ of habeas corpus was filed on May 22, 2007.

## ISSUES

Petitioner raises three issues: 1) the denial of due process and equal protection of the law under

the Fourteenth Amendment; 2) the denial of his Sixth Amendment right to effective assistance of

counsel; and 3) the denial of a fair and impartial trial.

## STATEMENT OF FACTS

The facts from petitioner's trial were found to be as follows in the North Carolina Court

of appeals opinion.

> The State's evidence at trial tended to show that in January 2003,
> Detective Carter Adkins (Detective Adkins) of the Pitt County Sheriff's
> Department arrested Willard Taylor (Taylor) for conspiracy to traffic in
> cocaine. Taylor told Detective Adkins he had purchased cocaine from
> defendant in the past, and that he could arrange to again buy cocaine from
> defendant. Detective Adkins instructed Taylor to arrange to buy two
> ounces of cocaine from defendant in the parking lot of a Food Lion on 11
> February 2003. Prior to the scheduled cocaine purchase, Detective Eddie
> Eubanks (Detective Eubanks) of the Lenoir County Sheriff's Department
> drove by defendant's home to identify any vehicles defendant might drive.
> Detective Eubanks saw "an older model" Ford pick-up truck parked in
> defendant's backyard. Detective Eubanks described the truck as being red
> and silver with "clearance lights on the top." At approximately 6:10 p.m.
> on 11 February 2003, Detectives Adkins and Eubanks met Taylor at a shop
> near the Food Lion. They searched Taylor and his truck and placed a
> repeater device in the truck to monitor Taylor's conversation during the
> cocaine buy. Detectives Adkins and Eubanks sat with a third detective in
> a surveillance van in the Food Lion parking lot about seventy-five yards
> from Taylor's truck. The surveillance van was equipped with a radio, a
> tape recorder, and a camcorder. The detectives saw a pick-up truck enter
> the parking lot and park next to Taylor's truck so that the drivers' doors
> were facing each other. Detective Eubanks described the pick-up truck as
> being the same Ford truck he had seen at defendant's home. The
> detectives did not see who was driving the pick-up truck, and they did not
> have independent knowledge of the voice they heard talking to Taylor

2

through the repeater. After the pick-up truck left the Food Lion, the detectives followed Taylor to a predetermined location, searched him, and recovered a substance that was later identified as 54.5 grams of cocaine. Upon returning to the police station, Detective Adkins ran the license plate of the pick-up truck and determined it belonged to a 1989 Ford pick-up truck registered to defendant's mother. The detectives did not attempt to arrest the driver of the pick-up truck.

In May 2004, approximately fifteen months after the arranged cocaine purchase, Taylor entered into a plea agreement with the State that resolved numerous narcotics charges pending against him. In exchange for Taylor's guilty plea to one count of trafficking in cocaine by possession, the State agreed to dismiss nine other charges. At the time of defendant's trial in August 2004, Taylor had not yet been sentenced for the trafficking conviction.

At trial, defendant denied selling Taylor cocaine on 11 February 2003, or on any other date. Defendant testified he did not drive his pick-up truck on the night of 11 February 2003. Gary Pastor (Pastor), a licensed private investigator, testified he had seen defendant's truck and had viewed the surveillance video. Pastor testified that, in his opinion, defendant's truck was not the truck in the surveillance video. Pastor pointed out three differences between the two trucks: (1) the width of a stripe painted on the trucks, (2) the rims of the wheels, and (3) the truck in the video had a tailgate, which defendant's truck did not have. Danny Arnette, a mechanic who had worked on defendant's truck, corroborated Pastor's testimony that defendant's truck had no tailgate.

At the jury instruction conference, defendant requested that the trial court instruct the jury as to Taylor's testimony pursuant to North Carolina Pattern Jury Instruction 104.21, which addresses testimony of witnesses with immunity or quasi-immunity. The trial court denied defendant's request and instructed the jury pursuant to Pattern Jury Instructions 104.20 and 104.30, which address testimony of interested witnesses and informers. The jury returned verdicts of guilty on all three charges. The trial court sentenced defendant to three consecutive sentences.

State v. Mewborn, 178 N.C. App. at 284-85.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The Court's review of Mewborn's claims is

governed by 28 U.S.C. § 2254(d) which provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the
> > facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision

"involve[s] an unreasonable application of" clearly established federal law "if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." Id. The factual findings

of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the

burden of rebutting this presumption by clear and convincing evidence. Id.

4

i. Denial of due process and equal protection of law under the Fourteenth Amendment

Petitioner sets out the claim of due process and equal protection as two separate claims within the complaint. However, the court finds it appropriate to review them as one. Mewborn argues that he was tried and convicted of a "single offense" of trafficking in cocaine because the evidence was of a "single incident." Therefore, he argues he should have received a "single sentence" of 35 - 42 months under N.C.G.S. § 90-95(h)(3). He also argues that the indictment should not have been three counts, but one count because the count arose out of this "single incident." While he couches his argument in terms of due process and equal protection, the arguments appear to assert violations of double jeopardy. In essence petitioner is alleging the unconstitutionality of being convicted of three separate crimes of trafficking in cocaine by possession, transportation, and sale, and sentenced to three separate 35 - 42 month sentences, all as the result of the same incident, the cocaine transaction.

Before the court examines the merits of petitioner's specific claims, it must ensure that the petitioner fairly presented his claims to the North Carolina courts. State prisoners are required "to present the state courts with the same claim he urges upon the federal courts." Picard v. Connor, 404 U.S. 270, 276 (1971); 28 U.S.C. § 2254(b)(1)(A). A federal petitioner has not exhausted state court review so long as he maintains "the right under the law of the State to raise [in state court] by any available procedure, the question presented." 28 U.S.C. § 2254(c). This exhaustion requirement compels a habeas petitioner to "invok[e] one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

5

Nevertheless, a claim that has not been adequately presented to the state courts may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner now attempted to present it. Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000); Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). A claim treated as exhausted and consequently procedurally defaulted because it would now be procedurally barred in state court can overcome the default if the petitioner can demonstrate cause and actual prejudice and/or a miscarriage of justice. Baker, 220 F.3d at 288 (quoting Gray v. Netherland, 518 U.S. 152, 162 (1996)); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Petitioner did not raise his claims of due process, equal protection, and/or double jeopardy. While he did assert other defects in the indictment, specifically the failure to use the word "knowingly" preceding each charge, he did not raise the claims now before this court. (MAR 7- 15) The claims were not raised on direct appeal or in any properly filed MAR.

If Petitioner now filed a MAR in state court raising these claims, the claims would be barred by the state court under North Carolina's mandatory, and adequate and independent, procedural bar state. N.C. Gen. Stat. § 15A-1419(a)(1), (a) (3), and (b) (2000); Rose v. Lee, 242 F.3d 676, 683 (4th Cir.) (holding § 15A-1419 is mandatory), cert. denied, 534 U.S. 941 (2001); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998) (holding § 15A-1419(a)(3) to be an independent and adequate state procedural bar, precluding federal habeas review), cert. denied, 525 U.S. 1155 (1999); McCarver v. Lee, 221 F. 3d 583, 588-589 (4th Cir. 2000) (holding § 15A-1419(a)(3) is an independent and adequate state procedural bar that is consistently and regularly applied even in "the special case" of ineffective assistance of counsel claims). Accordingly, these claims are procedurally defaulted and the court is precluded for considering the merits.

Case 5:07-hc-02102-BO   Document 8   Filed 08/05/08   Page 6 of 9

## ii. Ineffective Assistance of Counsel

Petitioner's entire assertion is as follows:

Trial attorney fail to object to any of the state's errors prejudicing the
Petitioner's trial in that he received no preserve claims for direct-review in the
appellate courts thereby denying Petitioner equal access to the appeals process.

While the clarity of the allegation is somewhat confused, the court shall assume, as

respondent does and to which petitioner makes no response or objection, that Mewborn is

arguing trial counsel was ineffective for not objecting to those errors appellate counsel raised on

direct appeal in terms of plain error because trial counsel did not object at trial. The contentions

on appeal were that: i) the trial court committed plain error by allowing the prosecutor to cross-

examine defendant on irrelevant and highly prejudicial matter that were not probative of

defendant's character for truthfulness; and ii) the trial court committed plain error by allowing

the prosecutor to cross examine defense witness Gary Pastor about the investigation preceding

his resignation from prior employment. The Court of Appeals held that neither of these issues

were prejudicial error. State v. Mewborn, 178 N.C. App. at 285-91. Specifically, "[t]o prevail

under the plain error analysis, a defendant must establish not only that the trial court committed

error, but that absent the error, th jury probably would have reached a different result." Id. at

287, quoting State v. Jones, 137 N.C. App. 221, 226 527 S.E.2d 700, 704 (2000).

However, petitioner did not raise the issue of ineffective assistance of counsel in his

direct appeal, nor did he raise the ineffective assistance issue specifically raised in this habeas in

the MAR.[1] Therefore, the issue is procedurally defaulted just as issue one is procedurally

---

[1]In his MAR, petitioner asserts the denial of effective assistance of counsel when trial counsel failed to move
for dismissal on the indictment (MAR 16 - 20) and the denial of effective assistance of counsel when trial counsel,
without defendant's knowledge or consent, allowed the state to introduce the laboratory report without the declarant

defaulted, and the court is precluded from considering the merits. 28 U.S.C. § 2254; Picard, 404 U.S. at 276; O'Sullivan, 526 U.S. at 845; Baker, 220 F.3d at 288; Breard, 134 F.3d at 619; N.C. Gen. Stat. § 15A-1419(a)(1), (a) (3), and (b) (2000); Rose v. Lee, 242 F.3d at 683; Williams, 146 F.3d at 209; McCarver, 221 F.3d at 588-589.

### iii. Denial of a fair and impartial trial

Mewborn asserts that he was denied a fair and impartial trial due to the trial court's failure to give the special jury instruction, i.e. the pattern jury instruction for considering testimony of a witness granted immunity or quasi immunity.

To obtain federal habeas relief on a jury charge claim, a petitioner must show not merely an erroneous charge, but hat the charge was so egregiously wrong as to render the entire trial fundamentally unfair. See Estelle v. McGuire, 502 U.S. 62, 66 (1991); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Cupp v. Naughten, 414 U.S. 141, 147 (1973).

The exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition. See Beard, 134 F.3d at 619. Moreover, procedural default bars a claim when the habeas petitioner does not exhaust his state court remedies and the court to which petitioner would be required to present his claim would now find them procedurally barred. Id. The presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim. Duncan v. Henry, 513 U.S. 364, 365-366 (1995); Mallory v. Smith, 27 F.3d 992, 994-95 (4th Cir. 1994);

In this case, petitioner presented claims to the state court which were similar to those now before this court, that the trial court erred in failing to charge the jury with the special jury

---

being available for cross examination (MAR 29 - 43).

instruction, i.e. the North Carolina pattern jury instruction for considering testimony of a witness granted immunity or quasi immunity. However, petitioner did not raise these as federal constitutional claims in the state court.[2] (Petitioner Direct Appeal Brief, Ex.4 of Summ. J. Mem., 27-31) Petitioner only argued in terms of state law and the Court of Appeals only addressed the issue in the context of state law as well. Mewborn, 178 N.C. App. at 292-293. If petitioner were to return to state court now, these claims would be procedurally barred under N.C.G.S. § 15A-1419(a)(3) and (b). This procedural default rule is an adequate and independent state law ground. See Williams, 146 F.3d at 209 (4th Cir. 1998).

Accordingly, respondent's motion for summary judgment is GRANTED and the matter is DISMISSED. Having so determined, all other pending motions are denied as MOOT.

SO ORDERED, this the _4_ day of _July_ 2008.

TERRENCE W. BOYLE
United States District Judge

---

[2]The court notes here that in petitioner's request for discretionary review to the North Carolina Supreme Court, the issues are set out as: "1. Whether Defendant is entitled to a new trial because the trial court erroneously denied his special requested jury instruction? II. Whether Defendant is entitled to a new trial because the prosecutor's cross-examination of Defendant violated the Fourteenth Amendment to the United States Constitution?" While not dispositive of the issue, the characterization and arguments support the court's finding that the jury instruction issue is couched only in state law terms in comparison to other issues argued by petitioner within the state court.

9